**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**


DAVID SHU,

          Appellant,

    v.

UNITED STATES POSTAL SERVICE,

          Agency.

DOCKET NUMBERS
SF-0353-11-0065-X-1
SF-0353-11-0065-C-1

DATE: November 7, 2022


# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>David Shu</u>, Santa Maria, California, pro se.

<u>Jessica Villegas</u> and <u>Jeremy M. Watson</u>, San Francisco, California, for the agency.


**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member


**FINAL ORDER**

¶1      This compliance proceeding was initiated by the appellant's petition for enforcement of the Board's September 25, 2014 Order in *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-B-2. On December 21, 2016, the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Board issued a non-final order finding the agency not in compliance with its September 25, 2014 Order. *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-C-1, Order (Dec. 21, 2016) (Compliance Order). For the reasons discussed below, we find the agency in compliance and DISMISS the petition for enforcement.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2 The appellant commenced work as a part-time flexible letter carrier for the agency on March 23, 2002. *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-I-1, Initial Appeal File (IAF), Tab 3 at 7. On September 22, 2003, the appellant suffered a back injury that led to him being absent from work beginning on September 24, 2003. *Id.* at 4. On September 30, 2003, the agency informed the appellant that he was in absent without leave (AWOL) status and had been in an unscheduled absent status since September 24, 2003. *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-B-1, Remand File (B-1 RF), Tab 17 at 5-8. On October 20, 2003, the appellant filed a workers' compensation claim for his September 22, 2003 injury. IAF, Tab 3 at 4-6. On November 7, 2003, the agency issued a Notice of Removal to the appellant based on a charge of Irregular Attendance/AWOL. IAF, Tab 6 at 40-42. The appellant's removal was effectuated December 12, 2003. IAF, Tab 3 at 4, Tab 6 at 38.

¶3 On March 14, 2008, the Office of Workers' Compensation Programs (OWCP) issued a decision stating that the appellant was temporarily totally disabled between September 24 and October 15, 2003, and entitled to compensation for this period. B-1 RF, Tab 16 at 16-18. On March 1, 2009, the appellant requested that he be reinstated to employment with the agency, but on April 27, 2009, the agency rejected that request. *Id.* at 19-20. On July 28, 2010, OWCP issued an additional decision finding that the appellant suffered from a compensable injury between September 23 and November 6, 2003. IAF, Tab 3

at 4-6.  On August 27, 2010, the appellant requested that the agency restore him to duty.  IAF, Tab 6 at 6.  The agency offered the appellant a carrier position in Santa Maria, California, and the appellant accepted, commencing work on November 6, 2010.  IAF, Tab 21 at 1.

¶4        On October 25, 2010, the appellant appealed to the Board, alleging that the agency had denied him restoration to duty following his recovery from a compensable injury.  IAF, Tab 1.  Following various administrative appeals and remands, on September 25, 2014, the administrative judge issued an initial decision finding that the agency's delay in restoring the appellant to duty between March 1, 2009, and November 6, 2010, was an improper denial of restoration.  *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-B-2, Remand File, Tab 40, Remand Initial Decision (RID) at 10-13.  The administrative judge instructed the agency to:  restore the appellant as of March 1, 2009; pay the appellant the appropriate amount of back pay; provide the appellant with service credit for the entire period of absence, from December 12, 2003, to November 6, 2010, for the purposes of rights and benefits based on seniority and length of service pursuant to 5 C.F.R. § 353.107; and inform the appellant in writing of all actions taken to comply with the Board's order.  RID at 16-17.  The remand initial decision became the final decision of the Board on October 30, 2014, after neither party petitioned the full Board for review.  RID at 17.

¶5        On November 21, 2014, the appellant filed a petition for enforcement of the September 25, 2014 remand initial decision.  *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-C-1, Compliance File (CF), Tab 1.  Over the course of multiple pleadings, the appellant alleged that the agency failed to comply with the remand initial decision by:  (1) failing to provide the appellant with appropriate seniority status and service credit for the period between December 13, 2003, and November 6, 2010; (2) improperly removing him from service; and (3) failing to pay him the correct amount of back pay and interest.  CF, Tab 1 at 4-7, Tabs 26-36.

¶6    On June 29, 2016, the administrative judge issued a compliance initial decision granting the petition for enforcement in part.  CF, Tab 49, Compliance Initial Decision (CID).  The administrative judge found that the agency was not in compliance because it failed to:  (1) provide a sufficient explanation of the back pay check issued to the appellant; (2) provide an explanation of how it calculated the appellant's step increase; (3) provide an explanation of how it arrived at the date of February 25, 2005, for retirement service credit; and (4) properly withhold the appellant's unemployment compensation withholding.  CID at 8-17.  Accordingly, the administrative judge ordered the agency to:  (1) provide evidence that it paid the appellant all back pay, interest, and benefits for the back pay period, along with a narrative explanation of how the agency arrived at its calculations, with an accounting of any deductions or other adjustments; (2) provide evidence that it credited the appropriate amount of retirement service to the appellant for the back pay period, with a narrative explanation of the amount of service; and (3) remit appropriate payment to the State of Nevada for the unemployment compensation withheld from the appellant's back pay and provide evidence of such payment to the State of Nevada.  CID at 17.

¶7    On August 18, 2016, the appellant filed a petition for review of the compliance initial decision.  Compliance Petition for Review (CPFR) File, Tab 3.  On December 21, 2016, the Board issued a nonprecedential, non-final order that denied the appellant's petition for review and affirmed the compliance initial decision.  Compliance Order at 5-11.  The Board referred the matter to the Office of General Counsel to obtain compliance.  Compliance Order at 11.

¶8    On August 26, 2016, the agency submitted a statement of compliance pursuant to 5 C.F.R. § 1201.183(a)(6)(i).  *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-11-0065-X-1, Compliance Referral File (CRF), Tab 4.  In its statement, the agency included a narrative summary explaining how the agency arrived at its back pay calculations, with an accounting for all deductions and other adjustments.  *Id.* at 6-66.  The agency's submission also stated that the

appellant's new service computation date would be considered February 11, 2005, and included an explanation as to how the agency reached that date. *Id.* at 46. However, the agency's submission still lacked any explanation as to how the agency calculated the appellant's step increase for the back pay period, and further lacked any evidence showing that it remitted appropriate payment to the State of Nevada for unemployment compensation withheld from the appellant's back pay. CRF, Tab 4. For the unemployment compensation, the agency indicated that it attempted to expedite the repayment process but was not able to so. *Id.* at 1-2.

¶9 On September 7 and September 9, 2016, the appellant filed submissions in response to the agency's statement of compliance. In his pleadings, the appellant put forward several arguments, many of which simply contested the findings from the compliance initial decision and the Board's order following his petition for review of that decision regarding his entitlement to the unemployment funds, his seniority, and his leave balances. CRF, Tabs 9-11. The appellant also argued, however, that the agency failed to provide any explanation for how it calculated his step increases, failed to account for the time he spent receiving OWCP compensation for his step increase calculation, and failed to prove it complied with the prior order regarding his unemployment compensation. CRF, Tab 9 at 9-15. On March 6, 2017, the appellant filed a second supplemental pleading, which contained evidence that he had been issued a Form 1099 for his prior unemployment compensation, implying that the agency may have paid this compensation directly to him rather than to the State of Nevada, as ordered by the Board. CRF, Tab 11 at 3-4.

¶10 On July 31, 2017, the Board issued an order requesting further information from the agency. CRF, Tab 12. The Board ordered the agency to provide evidence indicating whether the agency had remitted the appellant's unemployment funds to the State of Nevada or to the appellant directly, and to

provide a fuller explanation of how the agency calculated the appellant's step increase date. *Id.* at 2-3.

¶11 On August 14, 2017, the agency filed a response to the Board's July 31, 2017 Order. The agency stated in its response that it remitted the unemployment funds to the State of Nevada and included evidence to that effect. CRF, Tab 13 at 4, 6-8. The agency further stated that it was still working to reconstruct its narrative for the calculation of the appellant's step increase date and would provide that information shortly thereafter. *Id.* at 4-5. On August 27, 2017, the appellant filed a reply to the agency's response, which reiterated his arguments from his September 2016 pleadings. CRF, Tab 14 at 4-28.

¶12 On February 1, 2018, the agency filed a submission addressing the appellant's step increase date. CRF, Tabs 16-17. The agency contended that its April 13, 2015 pleading submitted to the administrative judge during the initial compliance litigation sufficiently explained its initial step increase date calculation, even accounting for the time period during which the appellant received OWCP benefits. CRF, Tab 17 at 4-8. With respect to that time period, the agency stated that while it did originally fail to include that time period in its initial step increase date calculation, its revised calculations accounting for the OWCP time period did not result in any change to the appellant's step increase date. *Id.* at 5-8. The agency included evidence in support of its assertion regarding the OWCP time period. *Id.* at 9-35.

¶13 On February 7, 2018, the appellant replied to the agency's submission. CRF, Tab 18. The appellant stated that the agency's assertions as to what days the appellant was previously on leave without pay (LWOP) status were incorrect and provided evidence in support of his claim. *Id.* at 4-12. The appellant further argued that the agency's incorrect assessment of his LWOP status led to an incorrect calculation of his step increase date. *Id.* at 4-5.

¶14 On May 10, 2018, the Board issued a second order requesting further information from the agency. CRF, Tab 19. The order noted that the agency's

evidence, in the form of the appellant's time and attendance statements, did not appear to reflect the appellant's time spent in a non-pay status, as claimed by the agency. *Id.* at 1-2. The Board thus ordered the agency to provide evidence establishing that the appellant was, in fact, in a non-pay status during the time periods asserted. *Id.*

¶15      On July 3, 2018, the agency filed a submission responsive to the Board's May 10, 2018 Order. CRF, Tab 26. The pleading contained additional explanation and evidence about the appellant's time and attendance statements establishing how the statements demonstrated the appellant's non-pay status for the previously asserted time periods. *Id.* at 4-15. On July 4, 2018, the appellant replied to the agency's pleading, arguing that the agency's evidence did not establish him as specifically being on LWOP status during the time periods in question. CRF, Tab 27 at 4-9.

¶16      On August 2, 2018, the Board issued a third order requesting further information from the agency. CRF, Tab 28. The order requested additional information from the agency about its step increase policy and how it operated for employees not in LWOP status but still in non-pay status. *Id.* at 1-2. On August 16, 2018, the agency filed a new submission that explained how employee step increases are calculated for employees in non-pay status and included evidence supporting its explanation. CRF, Tab 29 at 4-67. On August 18, 2018, the appellant replied to the agency's submission, repeating his argument that his step increase date should not have been deferred because of his non-pay status. CRF, Tab 30 at 4-18.

¶17      On July 3, 2021, the appellant filed additional documentation related to his 2015 removal by the agency. CRF, Tab 33. On July 6, 2021, the appellant filed in MSPB Docket No. SF-0353-11-0065-C-1 a motion for leave to submit the same additional documents in that docket number, arguing that these documents were not previously available to him. CPFR File, Tab 13 at 3.

## ANALYSIS

¶18    When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

¶19    The agency's outstanding compliance issues were its obligations to: (1) provide a narrative explanation of its back pay calculations; (2) explain the appellant's step increase date; (3) demonstrate that it remitted unemployment compensation to the State of Nevada; and (4) provide the appropriate amount of retirement service credit to the appellant. The agency's combined submissions show that the agency has now reached full compliance on all of these issues. The agency has provided a sufficient narrative explaining all of its back pay calculations. CRF, Tab 4 at 6-39. The agency also satisfactorily explained how it determined the appellant's step increase for the back pay period, including an explanation of how the appellant's non-pay status affected the calculation of his step increase date. CRF, Tab 17 at 4-35, Tab 26 at 4-15, Tab 29 at 4-67. The agency further provided sufficient evidence that it remitted appropriate payment to the State of Nevada for the unemployment compensation withheld from the appellant's back pay. CRF, Tab 13 at 4, 6-8. Finally, the agency provided satisfactory evidence showing that it credited the appropriate amount of retirement service to the appellant for the back pay period, along with a narrative explanation of how it arrived at that amount. CRF, Tab 4 at 46.

¶20　　　We have considered the appellant's objections to the agency's pleadings, but do not find any of the appellant's arguments to be meritorious.  As stated above, each of the arguments appear to only constitute challenges to the findings of the compliance initial decision.  Because these arguments were either already considered and rejected by the Board in its December 21, 2016 Order, or were available to the appellant but not raised in his petition for review, they will not be considered again here.  *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).  As to the appellant's other argument regarding non-pay status and its effect on his step increase date, the agency's submissions demonstrate that the agency correctly calculated the step increase date.  Specifically, the agency's August 16, 2018 submission explains that, while the appellant may have been in varying types of non-pay status during the time periods in question, each type of non-pay status had the same effect of delaying the appellant's step increase date by the amount of time spent in non-pay status.  CRF, Tab 29 at 4-9, 15, 18-19.

¶21　　　Finally, with respect to the appellant's July 6, 2021 motion for leave in MSPB Docket No. SF-0353-11-0065-C-1, the documents submitted all relate to the appellant's 2015 removal, which, as noted in the Board's December 21, 2016 Order, is not before the Board in the present matter.[2]

¶22　　　Accordingly, in light of the foregoing, the Board finds the agency in compliance and dismisses the petition for enforcement.  This is the final decision of the Merit Systems Protection Board in this compliance proceeding.  Title 5 of the Code of Federal Regulations, section 1201.183(c)(1)  (5 C.F.R. § 1201.183(c)(1)).

---

[2] The appellant filed a separate appeal of his removal in MSPB Docket No. SF-0353-15-0515-I-1.  On December 2, 2016, the Board issued a final decision dismissing the appellant's removal appeal for lack of jurisdiction.  *Shu v. U.S. Postal Service*, MSPB Docket No. SF-0353-15-0515-I-1 Final Order (Dec. 2, 2016).  That decision was affirmed by the United States Court of Appeals for the Federal Circuit on May 12, 2017.  *Shu v. Merit Systems Protection Board*, 689 Fed. Appx. 971, 974 (Fed. Cir. 2017).

## NOTICE OF APPEAL RIGHTS[3]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                          /s/ for
                                     Jennifer Everling
                                     Acting Clerk of the Board
Washington, D.C.